**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

MEUERS LAW FIRM, P.L., a Florida )
limited liability company, as assignee and )
PACA trustee of Crossroads Fresh )
Connections, Inc., )
           )
           Plaintiff, )
           )
v. )     Case No. 16-CV-208-GKF-JFJ
           )
REASOR'S, LLC, an Oklahoma limited )
company doing business as Reasor's Foods, )
           )
           Defendant. )

**OPINION AND ORDER**

This matter comes before the court on the Motion for Attorney's Fees and Costs [Doc. 102] of plaintiff Meuers Law Firm, P.L. For the reasons discussed below, the court defers ruling on the motion pending an evidentiary hearing on Friday, September 18, 2020, at 9:30 a.m.

**I.      Background and Procedural History**

Plaintiff Meuers Law Firm, P.L. brought this case in its capacity as the assignee of Crossroads Fresh Connections, Inc. and trustee of Crossroads' assets.

By way of background, Crossroads engaged in the business of the purchase, sale, and wholesale distribution of perishable agricultural commodities, specifically produce, from its warehouse in Tulsa, Oklahoma and operated its business subject to the Perishable Agricultural Commodities Act of 1930, *as amended*, 7 U.S.C. §§ 499a-499t (PACA). In March 2010, Crossroads and Reasor's entered into an agreement pursuant to which Reasor's agreed to purchase produce from Crossroads for delivery to Reasor's stores and Crossroads agreed that Reasor's was entitled to a quarterly rebate in an amount equal to three percent of Reasor's total purchases from

Crossroads in each calendar quarter. From the inception of their business relationship through the third quarter of 2013, at the end of each calendar quarter, Reasor's issued an invoice to Crossroads for the rebate in an amount equal to three percent of total produce purchases for the quarter, and Crossroads issued a check to Reasor's for the invoice amount.

Four years after the inception of the relationship, on March 31, 2014, Reasor's notified Crossroads that it was terminating its relationship with Crossroads effective April 4, 2014. Between March 23, 2014 and April 7, 2014, Reasor's purchased produce totaling $409,459.04 from Crossroads. Crossroads issued to Reasor's, and Reasor's received, invoices for the $409,459.04 purchases that each contained the following PACA Trust statement:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 [7 U.S.C 499e(c)]. The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sales of these commodities until the full payment is received.

On April 4, 2014, Crossroads ceased business operations and owed its produce suppliers more than $2,000,000 for produce purchases.

Shortly thereafter, on April 9, 2014, Keith Connell, Inc.—one of Crossroads' suppliers— commenced a lawsuit against Crossroads in the Northern District entitled *Keith Connell, Inc. v. Crossroads Fresh Connections, Inc.*, Case No.: 4:14-cv-00166-CVE-TLW, seeking to enforce its rights under the PACA Trust to payment of $1,003,923.35 for produce it sold and delivered to Crossroads. On April 16, 2014, the court entered a Stipulated Injunction and Agreed Order Establishing PACA Trust Claims Procedure (PACA Order) in that action.

On April 18, 2014, Meuers, Crossroads, and Reasor's entered into a letter agreement regarding Reasor's payment of amounts owed to Crossroads to Meuers as required under the PACA Order. However, Reasor's did not pay the $409,459.04 outstanding balance. Rather,

Reasor's deducted $308,721.73 in claimed rebates owed to it (Total Rebate Claims), resulting in a payment of $100,737.31.[1]

Meuers initiated this litigation to recover the Total Rebate Claims. *See* [Doc. 18]. The Amended Complaint included nine counts: (1) breach of contract – supply agreement; (2) breach of contract –produce sales contracts; (3) declaratory relief validating PACA Trust claim – produce sales contracts; (4) violations of PACA statute: failure to pay promptly – produce sales contract; (5) violation of an Order entered in 14-CV-166-CVE-TLW; (6) declaratory judgment – unlawful set-off – produce sales contracts; (7) violation of PACA statute: breach of trust – produce sales contract; (8) violation of PACA statute: breach of duties as PACA Trustee – produce sales contracts; and (9) unlawful retention of PACA Trust assets – produce sales contracts. [*Id.*]. The court dismissed the fifth count [Doc. 30], and Meuers stipulated that it was no longer pursuing the first count on July 24, 2017. [Doc. 53].

The parties submitted the matter for decision of the court on stipulated facts. On September 29, 2017, the court entered Judgment in plaintiff's favor in the amount of $135,818.59 on counts 3, 4, 6, and 8. [Doc. 65]. However, the court entered Judgment in Reasor's favor as to counts 2, 5, 7, and 9. [*Id.*].

The parties filed cross appeals asserting entitlement to the entirety of the Total Rebate Claims. On November 27, 2019, in an unpublished decision, a divided panel of the Tenth Circuit affirmed in part and reversed in part. [Doc. 93; *Meuers Law Firm, P.L. v. Reasor's, LLC,* 796 F. App'x 472 (10th Cir. 2019)]. Specifically, the majority concluded that the parties had not properly raised the potential applicability of PACA provisions regarding "collateral fees and expenses" on

---

[1] The Total Rebate Claims consisted of the following: $141,962.16 for the fourth quarter of 2013; $126,303.90 for the first quarter of 2014; $9,514.69 for the second quarter of 2014; and $30,940.98 for under-paid rebates for 2012 and 2013 after an audit conducted by Reasor's.

which this court relied to conclude that Reasor's was entitled to a partial rebate of $172,903.14, and, "based solely on the arguments presented by the parties . . the district court erred when it failed to apply a PACA trust to all monies withheld by Reasor's, which would have resulted in entry of judgment in favor of Meuers in the full $308,721.73 amount." [Doc. 93, p. 25].  Thus, the Circuit panel remanded the matter to this court with instructions to enter judgment for Meuers in the additional sum of $172,903.14.  [*Id.*].

On remand, on December 20, 2019, this court entered Judgment in the amount of $172,903.14, plus prejudgment interest at the rate of 0.53% per annum in the amount of $5,254.79, and post-judgment interest at the rate of 1.55%.  [Doc. 95].  On December 26, 2019, the court granted plaintiff's Motion to Alter Judgment [Doc. 96] and entered an amended judgment in the amount of $172,903.14, plus *prejudgment interest at the rate of 1.16%* per annum in the amount of $11,338.60, and post-judgment interest at the rate of 1.55%.  [Doc. 98].

Meuers now seeks attorney's fees in the amount of $257,802.75 as a prevailing party.[2] [Doc. 102].  Reasor's has responded in opposition [Doc. 106], and Meuers has filed a reply.  [Doc. 110].  Thus, the motion is ripe for the court's determination.

## II.      Entitlement to Attorney's Fees

Reasor's first argues that Meuers is not entitled to an award of attorney's fees.  In the Tenth Circuit, "[i]n diversity cases generally, . . ., attorney fees are determined by state law and are substantive for diversity purposes."  *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1445 (10th

---

[2] Reasor's does not dispute that Meuers constitutes a prevailing party.  [Doc. 106, p. 1].

Cir. 1993) (quoting *King Res. Co. v. Phoenix Res. Co.*, 651 F.2d 1349, 1353 (10th Cir. 1981)).[3]

Thus, the court must look to Oklahoma law. The Oklahoma Supreme Court has stated:

> In Oklahoma, the right of a litigant to recover attorney fees is governed by the American Rule.  This Rule is firmly established in Oklahoma and provides that courts are without authority to award attorney fees in the absence of a specific statute or a contractual provision allowing the recovery of such fees, with certain exceptions.

*Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 178-79 (Okla. 2000).  Exceptions to the

American Rule are narrowly construed.  *See Kay v. Venezuelan Sun Oil Co.,* 806 P.2d 648, 650

(Okla. 1991).

Meuers asserts it is entitled to recover attorney's fees under Oklahoma law on two bases:

(1) "as a result of enforcing equitable rights to remedy breach of the PACA trust," and (2) Okla.

Stat. tit. 12, § 936.  The court separately considers each basis.

### A.      Enforcement of Equitable Rights

In support of its claim to attorney's fees based on enforcement of equitable rights, Meuers

primarily relies on an Oklahoma Court of Civil Appeals decision, *Blackwell Livestock Auction,*

*Inc. v. Community Bank of Shidler*, 864 P.2d 1297 (Okla. Civ. App. 1993).  Therein, the court

concluded that, although the trial court did not identify the legal theory under which it awarded

attorney's fees, the decision "plainly show[ed] this is a matter in equity and this was a suit to

enforce an equitable lien."  *Id.* at 1301.  The court cited Oklahoma Supreme Court's decision in

*Security St. Bank of Comanche v. W.R. Johnston & Co.*, 228 P.2d 169 (Okla. 1951), and held that

the award of attorney's fees was proper in the case.  *Blackwell Livestock Auction, Inc.,* 864 P.2d

at 1301.  Meuers therefore relies on *Blackwell* for the broad proposition that, because Meuers

---

[3] In the Amended Complaint, Meuers invoked both the court's federal question (28 U.S.C. § 1331) and diversity (28 U.S.C. § 1332) jurisdiction.

sought to recover assets wrongfully misappropriated by Reasor's in which Crossroads held an equitable interest, it is entitled to attorney's fees.

However, *Blackwell* was not ordered to be released for publication by the Oklahoma Supreme Court. Thus, the decision is not afforded precedential value and shall be considered only to have persuasive effect. Okla. Sup. Ct. R. 1.200(d)(2). In this case, *Blackwell* is not persuasive.

As set forth above, *Blackwell* cited the Oklahoma Supreme Court's decision in *Security State Bank,* but provided no analysis of that decision. *Blackwell Livestock Auction, Inc.,* 864 P.2d at 1301. In *Security State Bank*, the Oklahoma Supreme Court adopted the following:

> The general rule is that costs and expenses of litigation, other than the usual and ordinary court costs, are not recoverable in an action for damages, nor are such costs even recoverable in a subsequent action; but, where the wrongful acts of the defendant *have involved the plaintiff in litigation with others, or placed him in such relations with others as make it necessary to incur expense to protect his interest, such costs and expense should be treated as legal consequences of the original wrongful act.*

*Security St. Bank of Comanche*, 228 P.2d at 173 (emphasis added). The statement reflects the Restatement (Second) of Torts § 914 (1979). Section 914 articulates the general rule that "[t]he damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation," but recognized an exception where "[o]ne who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action." Restatement (Second) of Torts § 914 (1979); *see also Cagle v. James Street Group*, No. CIV-07-0029-D, 2009 WL 10672477, at *3 (W.D. Okla. July 15, 2009). Pursuant to the exception, a plaintiff must show, among other things, that he or she was involved in litigation *with a third-party* and that the attorney's fees were incurred in *that third-party litigation*. *Cagle*, 2009 WL 10672477, at *3; *see also* 45 A.L.R.2d

1183 (recognizing as element that "[t]he litigation must have been against a third party and not against the defendant in the present action").

However, in *Blackwell,* the plaintiff, as the prevailing party, sought attorney's fees incurred in the case against the defendant in that action, not against a third party. *Blackwell Livestock Auction, Inc.,* 864 P.2d at 1299, 1301. Thus, *Blackwell* constitutes an overly broad application of the general rule articulated in *Security State Bank* and is not persuasive in this case. Here, Meuers seeks to recover attorney's fees incurred *in the present litigation*, not against a third-party. Thus, the exception recognized by the Oklahoma Supreme Court in *Security State Bank* is not applicable. *See Barnes,* 11 P.3d at 181-82.

> B.       *Okla. Stat. tit. 12, § 936*

Section 936(A) states as follows:

> In any civil action to recover for labor or services rendered, or on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

Okla. Stat. tit. 12, § 936(A). The statute applies to permit attorney's fees "only where a party is seeking to collect 'monetary consideration promised as payment for the receipt of property, labor or services.'" *Specialty Beverages, L.L.C. v. Pabst Brewing Co.,* 537 F.3d 1165, 1184 (10th Cir. 2008) (quoting *Kay*, 806 P.2d at 651 n.12); *see also Don Thornton Imports, LLC v. Z Auto Grp., LLC*, No. 17-CV-0158-CVE-TLW, 2017 WL 3189452, at *1 (N.D. Okla. July 27, 2017). The Oklahoma Supreme Court has instructed that § 936 is mandatory, but must be "strictly applied." *Kay*, 806 P.2d at 650.

Reasor's argues that § 936 cannot apply because Meuers did not prevail on the breach of contract claim (count 2). However, Oklahoma law requires the court to consider the "gravamen"

or "underlying nature of the suit itself" to determine the statute's applicability. *See Kay*, 806 P.2d at 652; *Burrows Constr. Co. v. Indep. Sch. Dist. No. 2*, 704 P.2d 1136, 1138 (Okla. 1985) (requiring court to look at the "underlying nature" of the suit itself); *Batman v. Metro Petroleum, Inc.*, 174 P.3d 578, 584 (Okla. Civ. App. 2007). Here, the gravamen of counts 3, 4, 6, and 8—the counts on which Meuers prevailed—seeks to recover the full amount of the outstanding purchase price of the produce, part of which was withheld by Reasor's as the Total Rebate Claims. That is, through the prevailing counts, Meuers sought monetary consideration promised as payment for the receipt of property (the produce). The Judgments award the Total Rebate Claims. Thus, this case, and specifically the counts on which Meuers prevailed, constitutes a civil action on a contract relating to the purchase or sale of goods. Meuers is therefore entitled to an award of reasonable attorney's fees pursuant to Okla. Stat. tit. 12, § 936.

### III.     Reasonableness of Attorney's Fees Sought

In the Tenth Circuit, "the determination of reasonableness and amount of the fee award is generally left to the sound discretion of the district court." *Gable, Simmons & Co. v. Kerr-McGee Corp.*, 175 F.3d 762, 773 (10th Cir. 1999) (citing *Harris Mkt. Research v. Marshall Mktg. Commc'ns, Inc.*, 948 F.2d 1518, 1527 (10th Cir. 1991)). An evidentiary hearing is generally preferred to resolve material factual disputes between the parties regarding the reasonableness and amount of attorney's fees. *Id.* at 774 (citing *Michael A. Cramer, MAI, SRPA, Inc. v. United States*, 47 F.3d 379, 383 (10th Cir. 1995)). Reasor's requests an evidentiary hearing as to the reasonableness of the requested fees, and the court finds that a hearing would be helpful to determine disputed facts.

## IV.   Conclusion

WHEREFORE, ruling on Plaintiff Meuers Law Firm, P.L.'s Motion for Attorney's Fees and Costs [Doc. 102] is deferred pending an evidentiary hearing on the reasonableness of the attorney's fees sought on Friday, September 18, 2020, at 9:30 a.m.

ENTERED this 10th day of August, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE