## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

MEUERS LAW FIRM, P.L., a Florida )
limited liability company, as assignee and )
PACA trustee of Crossroads Fresh )
Connections, Inc., )
          )
         Plaintiff, )
          )
v. )        Case No. 16-CV-208-GKF-JFJ
          )
REASOR'S, LLC, an Oklahoma limited )
company doing business as Reasor's Foods, )
          )
         Defendant. )

## OPINION AND ORDER

This matter comes before the court on the Motion for Attorney's Fees and Costs [Doc. 102] of plaintiff Meuers Law Firm, P.L. For the reasons set forth below, the motion is granted in part and denied in part. Plaintiff is awarded attorney fees totaling $190,757.83.

### I.     Background and Procedural History

Plaintiff Meuers Law Firm, P.L. brought this case in its capacity as the assignee of Crossroads Fresh Connections, Inc. and trustee of Crossroads' assets.

By way of background, Crossroads engaged in the business of the purchase, sale, and wholesale distribution of perishable agricultural commodities, specifically produce, from its warehouse in Tulsa, Oklahoma, and operated its business subject to the Perishable Agricultural Commodities Act of 1930, *as amended*, 7 U.S.C. §§ 499a-499t (PACA). In March 2010, Crossroads and Reasor's entered into an agreement pursuant to which Reasor's agreed to purchase produce from Crossroads for delivery to Reasor's stores and Crossroads agreed that Reasor's was entitled to a quarterly rebate in an amount equal to three percent of Reasor's total purchases from

Crossroads in each calendar quarter.  From the inception of their business relationship through the third quarter of 2013, at the end of each calendar quarter, Reasor's issued an invoice to Crossroads for the rebate in an amount equal to three percent of total produce purchases for the quarter, and Crossroads issued a check to Reasor's for the invoice amount.

Four years after the inception of the relationship, on March 31, 2014, Reasor's notified Crossroads that it was terminating the relationship effective April 4, 2014.  Between March 23, 2014 and April 7, 2014, Reasor's purchased produce totaling $409,459.04 from Crossroads. Crossroads issued to Reasor's, and Reasor's received, invoices for the $409,459.04 purchases that each contained the following PACA Trust statement:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 [7 U.S.C 499e(c)]. The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sales of these commodities until the full payment is received.

On April 4, 2014, Crossroads ceased business operations and owed its produce suppliers more than $2,000,000 for produce purchases.

Shortly thereafter, on April 9, 2014, Keith Connell, Inc.—one of Crossroads' suppliers— commenced a lawsuit against Crossroads in the Northern District entitled *Keith Connell, Inc. v. Crossroads Fresh Connections, Inc.*, Case No. 14-cv-00166-CVE-TLW, seeking to enforce its rights under the PACA Trust to payment of $1,003,923.35 for produce it sold and delivered to Crossroads.  On April 16, 2014, U.S. District Judge Claire V. Eagan entered a Stipulated Injunction and Agreed Order Establishing PACA Trust Claims Procedure (PACA Order) in that action.

On April 18, 2014, Meuers, Crossroads, and Reasor's entered into a letter agreement regarding Reasor's payment of amounts owed to Crossroads to Meuers as required under the PACA Order.  However, Reasor's did not pay the $409,459.04 outstanding balance.  Rather,

Reasor's deducted $308,721.73 in claimed rebates owed to it (Total Rebate Claims), resulting in a payment of $100,737.31.[1]

Meuers subsequently initiated this litigation.  The original Complaint in this case included sixteen counts:  (1) breach of the implied covenant of good faith and fair dealing; (2) breach of fiduciary duty; (3) breach of contract; (4) tortious interference with contractual relations; (5) fraudulent inducement; (6) fraudulent concealment; (7) violation of PACA: making, for a fraudulent purpose, false or misleading statements in connection with produce transactions; (8) violation of PACA: failure, without reasonable care, to perform any specification or duty, express or implied, arising out of any undertaking in connection with produce transactions; (9) breach of contract; (10) violation of PACA: failure to pay promptly; (11) declaratory relief validating PACA trust claim; (12) declaratory judgment – unlawful set-off; (13) violation of PACA: breach of trust; (14) violation of PACA: breach of duties as PACA trustee; (15) violation of PACA Order; and (16) conversion and unlawful retention of PACA trust assets. *See generally* [Doc. 2].  Counts One through Eight generally related to the 2010 supply agreement between Crossroads and Reasor's. Counts nine through sixteen related to the contracts to purchase produce during the period from March 23, 2014 and April 7, 2014.

Reasor's moved to dismiss the Complaint.  [Doc. 12].  Rather than responding to the motion to dismiss, on June 15, 2016, Meuers filed an Amended Complaint.  [Doc. 18].  The Amended Complaint included nine counts:  (1) breach of contract – supply agreement; (2) breach of contract –produce sales contracts; (3) declaratory relief validating PACA Trust claim – produce sales contracts; (4) violations of PACA statute: failure to pay promptly – produce sales contracts;

---

[1] The Total Rebate Claims consisted of the following:  $141,962.16 for the fourth quarter of 2013; $126,303.90 for the first quarter of 2014; $9,514.69 for the second quarter of 2014; and $30,940.98 for under-paid rebates for 2012 and 2013 after an audit conducted by Reasor's.

(5) violation of PACA Order; (6) declaratory judgment – unlawful set-off – produce sales contracts; (7) violation of PACA statute: breach of trust – produce sales contracts; (8) violation of PACA statute: breach of duties as PACA Trustee – produce sales contracts; and (9) unlawful retention of PACA Trust assets – produce sales contracts.  Only Count One—breach of contract— related to the supply agreement.  The remaining counts related to the produce sales contracts.  [*Id.*].  Reasor's moved to dismiss the Amended Complaint.  [Doc. 23].  This court dismissed Count Five, but otherwise denied defendant's motion.  [Doc. 30].

On May 10, 2017, the parties attended a settlement conference before U.S. Magistrate Judge Frank H. McCarthy, but the litigation did not settle.  [Doc. 43].

By agreement, the parties submitted the matter for decision of this court on stipulated facts. *See* [Doc. 50, Doc. 53, Doc. 54, and Doc. 55].  In the seven-page Stipulation of Undisputed Facts submitted by the parties, Meuers stipulated that it was no longer pursuing Count One.  [Doc. 53, p. 1].  On September 29, 2017, the court entered Judgment in plaintiff's favor in the amount of $135,818.59 on Counts 3, 4, 6, and 8.  [Doc. 65].  However, the court entered Judgment in Reasor's favor as to Counts 2, 5, 7, and 9.  [*Id.*].

On October 27, 2017, Meuers filed a Motion for Reconsideration of Judgment, seeking reconsideration of the court's decision in Reasor's favor in the amount of $172,903.14 on Count Nine, and that Reasor's had the right to set-off $87,903.14 from plaintiff's claim in Counts 3, 4, 6, and 8.  *See* [Doc. 68].  The court denied plaintiff's request for reconsideration, stating "[u]pon review of the relevant motions and briefing, plaintiff raises no arguments which were not available at the time the parties originally briefed the issues.  Rather, plaintiff's motion seeks only to revisit arguments already addressed in the prior briefing."  [Doc. 72, p. 2].

The parties filed cross-appeals asserting entitlement to the entirety of the Total Rebate Claims ($308,721.73).  Meuers raised a single issue on appeal:  "[w]hether the district court erred in concluding under Count 9 of the Amended Complaint that Reasor's failure to pay for produce purchased and retention of $308,721.73 owed on the produce sales to Crossroads used to pay Crossroads' unsecured rebate debt did not result in a transfer of PACA Trust Assets to the possession of Reasor's?"  Principal Brief of Appellant and Cross-Appellee Meuers Law Firm, P.L., *Meuers Law Firm, P.L. v. Reasor's, LLC*, No. 18-5055, 18-5059 (10th Cir. Nov. 8, 2018), Doc. 010110081521, p. 14.  Reasor's appealed the court's Judgment as to Counts 3, 4, 6, and 8, presenting three issues, including the following:  "Did the District Court err when it ruled that Reasor's could only set off $172,903.14 owed to Reasor's by Crossroads for rebates against sums which would have otherwise been due from Reasor's to Crossroads for produce purchases, but that the set off of $135,818.59 violated the Crossroads-Reasor's Trust?"  Principal Brief of Appellee and Cross-Appellant Reasor's, LLC, *Meuers Law Firm, P.L. v. Reasor's, LLC*, No. 18-5055, 18-5059 (10th Cir. Dec. 10, 2018), Doc. 010110095575, p. 8.

On November 27, 2019, in an unpublished decision, a divided panel of the Tenth Circuit affirmed in part and reversed in part.  [Doc. 93]; *see also Meuers Law Firm, P.L. v. Reasor's, LLC*, 796 F. App'x 472 (10th Cir. 2019).  Specifically, the majority concluded that the parties had not properly raised the potential applicability of PACA provisions regarding "collateral fees and expenses" on which this court relied to conclude that Reasor's was entitled to a partial rebate of $172,903.14, and, "based solely on the arguments presented by the parties . . . the district court erred when it failed to apply a PACA trust to all monies withheld by Reasor's, which would have resulted in entry of judgment in favor of Meuers in the full $308,721.73 amount."  [Doc. 93, p.

25].  Thus, the Circuit panel remanded the matter to this court with instructions to enter judgment for Meuers in the additional sum of $172,903.14.  [*Id.*].

On remand, on December 20, 2019, this court entered Judgment in the amount of $172,903.14, plus prejudgment interest at the rate of 0.53% per annum in the amount of $5,254.79, and post-judgment interest at the rate of 1.55%.  [Doc. 95].  On December 26, 2019, the court granted plaintiff's Motion to Alter Judgment [Doc. 96] and entered an Amended Judgment in the amount of $172,903.14, plus prejudgment interest at the rate of 1.16% per annum in the amount of $11,338.60, and post-judgment interest at the rate of 1.55%.  [Doc. 98].

Meuers subsequently filed the Motion for Attorneys' Fees and Costs [Doc. 102], seeking attorney fees in the sum of $257,802.75 as a prevailing party.  In the motion, Meuers asserted entitlement to attorney fees under Oklahoma law on two bases:  (1) "as a result of enforcing equitable rights to remedy breach of the PACA trust," and (2) Okla. Stat. tit. 12, § 936.  In an August 10, 2020 Opinion and Order, the court rejected plaintiff's entitlement to attorney fees based on enforcement of equitable rights, but concluded that Meuers was entitled to an award of reasonable attorney fees under Okla. Stat. tit. 12, § 936.  [Doc. 111, pp. 7-8].

Reasor's subsequently sought reconsideration of plaintiff's entitlement to attorney fees pursuant to Okla. Stat. tit. 12, § 936, [Doc. 113], which the court denied.  [Doc. 120].

On September 16, 2020, Meuers filed a supplement to its motion for attorney fees seeking an additional $26,901.00 in fees related to the fee application.  [Doc. 118].

On September 18, 2020, the court held an evidentiary hearing as to the amount of reasonable attorney fees.  [Doc. 121].  During the hearing, Meuers represented to the court that it had further reduced the amount sought in its original motion from $257,802.75 to $245,663.25.  [Plaintiff's Ex. 3].  The reduction did not affect the amount sought in the supplement with respect

6

to the fee application.  At the close of the hearing, the court took the matter under advisement in order to prepare this written opinion.

## II.     Standard

In the Tenth Circuit, "[i]n diversity cases generally, . . ., attorney fees are determined by state law and are substantive for diversity purposes." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1445 (10th Cir. 1993) (quoting *King Res. Co. v. Phoenix Res. Co.*, 651 F.2d 1349, 1353 (10th Cir. 1981)).[2]  State law controls both the right to fees and the method to calculate the fee award.  *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 461-62 (10th Cir. 2017).  Thus, the court must look to Oklahoma law.

Under Oklahoma law, "an attorney's fee must in every instance be reasonable.  This is so whether the fee is to be paid by the lawyer's client or by the losing litigant." *Morgan v. Galilean Health Enters., Inc.*, 977 P.2d 357, 364 (Okla. 1998) (internal footnote omitted).  "Generally, the correct formula for calculating a reasonable fee is to: 1) determine the compensation based on an hourly rate; and 2) enhance the fee through consideration of the factors outlined in *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659 (*Burk* factors)." *Spencer v. Okla. Gas & Elec. Co.*, 171 P.3d 890, 895 (Okla. 2007).  The *Burk* factors are as follows:

> Time and labor required; novelty and difficulty of the questions; skill requisite to perform the legal service; preclusion of other employment; customary fee; whether the fee is fixed or contingent; time limitations; amount involved and results obtained; experience, reputation and ability of the attorneys involved; risk of recovery; nature and length of relationship with the client; and awards in similar causes.

---

[2] In the Amended Complaint, Meuers invoked both the court's federal question (28 U.S.C. § 1331) and diversity (28 U.S.C. § 1332) jurisdiction.  Further, there appears to be no dispute that Oklahoma law applies.  *See* [Doc. 102; Doc. 106].

*Id.* (citing *Burk*, 598 P.2d at 662).  Finally, the award "must bear some reasonable relationship to the amount in controversy." *Sw. Bell Tel. Co. v. Parker Pest Control, Inc.*, 737 P.2d 1186, 1189 (Okla. 1987).

Under Oklahoma law, "[a]n attorney seeking an award must submit detailed time records and offer evidence of the reasonable value of the services performed based on the standards of the legal community in which the attorney practices." *Spencer*, 171 P.3d at 895; *see also Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,* 82 F.3d 1533, 1553 (10th Cir. 1996).  Based on the records submitted, "a lodestar fee is arrived at by multiplying the attorney's hourly rate by the hours expended." *Spencer*, 171 P.3d at 895.  The lodestar fee "is an amount reached by multiplying the time spent by the hourly rate charged by the attorney." *Id.* at 897 n.27.  "The burden is on [the movant] to demonstrate that the time for which compensation is sought was reasonable and necessary in order for the court to decide the fee amount to be awarded." *Okla. Nat. Gas Co. v. Apache Corp.*, 355 F. Supp. 2d 1246, 1253 (N.D. Okla. 2004).

Once the lodestar is determined, only then may the court determine whether to enhance the fee based on application of the *Burk* factors. *Spencer*, 171 P.3d at 895, 897 n.27.  Thus, "[t]he essential task for the court is to determine the reasonable time spent on the case and multiply those hours by the hourly rate generally charged for comparable work in this market." *Okla. Nat. Gas Co.*, 355 F. Supp. 2d at 1253.

### III.    Motion for Fees

Meuers asserts a lodestar total fee award of $272,564.25.  Plaintiff seeks $375 per hour for attorney timekeeper Lawrence H. Meuers, $295 per hour for attorney timekeeper Steven M. DeFalco, and $165 per hour for paralegal timekeeper Luanne M. Rogers.

Reasor's does not object to the hourly rates charged in this matter.[3]   However, Reasor's does challenge the reasonableness of the hours claimed.  Reasor's generally argues that the number of hours expended by Meuers was excessive and unreasonable.  To that end, in its response to the motion for attorney fees, Reasor's raises five separate objections:

1. The approximately $30,000 in fees related to the pleadings is excessive;

2. Meuers should not be permitted to recover fees totaling $22,600.50 associated with plaintiff's motion to reconsider the September 29 Judgment, which was denied;

3. The $25,489.50 sought in association with discovery is excessive;

4. Meuers seeks duplicative fees and fees for excess research and drafting in association with the appeal; and

5. Meuers did not reduce its claimed fees for those matters on which it did not ultimately prevail.

During the evidentiary hearing, Reasor's raised two additional objections.  First, Reasor's objected to the $20,157.00 incurred for "procedure" as primarily being non-billable administrative tasks.  Second, Reasor's argued the $17,720.75 incurred in relation to settlement was excessive for a case in which the damages sought were limited to $308,721.73.  The court separately considers each objection.[4]  Finally, as required under Oklahoma law, the court considers the reasonableness of

---

[3] Reasor's has never objected to the hourly rates charged by attorneys Meuers or DeFalco.  *See* [Doc. 106, p. 2].  However, in its objection to plaintiff's motion for attorney fees, Reasor's objected to the $195 hourly rate originally attributed to paralegal Rogers.  [*Id.* at p. 8].  During the September 18 evidentiary hearing, the parties stipulated to a $165 paralegal hourly rate.

[4] During the September 18 evidentiary hearing, Reasor's also "commented" on the fact that Meuers had not put into the records the bills as actually sent to, and paid by, its client.  However, under Oklahoma law, "[a] fee award may be made based on reconstructed records."  *Spencer,* 171 P.3d at 895 n.20.  Further, Reasor's provides no authority to substantiate its claim that § 936 requires Meuers to prove the amount of fees *actually paid* by its client.  *Cf.* Okla. Stat. tit. 27, § 11(d) and Okla. Stat. tit. 66, § 55 (providing for attorney fees "actually incurred") with Okla. Stat. tit. 12, § 936 (providing "the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs"); *see also Spencer,* 171 P.3d at 895 ("An attorney seeking an award must submit detailed time records and offer evidence of the reasonable value of the

the time expended as a whole, then the potential application of any *Burk* factors, and, finally, the relationship of the award to the amount in controversy.  That is, the court's essential task in this matter is to determine the attorney fee award to which Meuers is entitled based on the reasonable amount of time spent on the case.

## IV.    Lodestar Figure

As set forth above, the court first considers Reasor's specific objections.

*A.    Fees Sought Related to the Pleadings*

Reasor's characterizes plaintiff's motion as seeking $30,420.50 in attorney fees associated with the pleadings, which Reasor's contends reflects an unreasonable number of hours to frame relatively "simple" documents.  [Doc. 106, pp. 9-10].  Although not explicitly set forth in Reasor's objection, it is clear that Reasor's approximation of fees incurred related to the pleadings includes time spent by Meuers related to the motion to dismiss briefing.  Based on plaintiff's Exhibit 2, admitted during the September 18 evidentiary hearing, Meuers asserts it seeks $25,899.00 in fees representing 62.8 attorney hours (41.5 hours by L. Meuers and 21.3 by DeFalco) and 23.2 paralegal hours associated with drafting the complaints and briefing on the motions to dismiss.  [Pl.'s Ex. 2 (Task Code 1 and Task Code 7)].[5]  The court first considers Task Code 1.

The court concludes that the 42.9 hours expended to prepare the Complaint and Amended Complaint was excessive and unreasonable.  As previously stated, in the original Complaint,

_____

services performed based on the standards of the legal community in which the attorney practices.").

[5] The court has attached Plaintiff's Exhibit 2 as Exhibit A.  Exhibit 2 presents the requested fees based on fourteen separate "task codes."  For example, time associated with drafting the Complaint and Amended Complaint is designated as Task Code 1, time associated with discovery is Task Code 3, the motion to dismiss briefing is Task Code 7.  The court notes that nothing is assigned to Task Code 5 in Exhibit 2.

Meuers asserted sixteen claims, eight premised on the 2010 supply agreement between Reasor's and Crossroads, and eight arising out of the Total Rebate Claims.  Rather than responding to defendant's motion to dismiss that pleading, Meuers filed the Amended Complaint.  The Amended Complaint asserted only nine causes of action.  Counts 2 through 9 were related to the Total Rebate Claims and virtually identical to the last eight cause of action asserted in the original Complaint.

The court acknowledges plaintiff's somewhat unique position in bringing this case both in its capacity as PACA trustee of Crossroads and Crossroads' assignee.  Nevertheless, it appears that plaintiff injected unnecessary complexity into this case from its inception by adopting numerous, implausible theories, most of which were ultimately dismissed or abandoned.  The court's concern is exacerbated by the fact that plaintiff's counsel is a PACA expert from whom the court expects a measure of efficiency.  Yet, plaintiff's time records reflect inefficiency in connection with the pleadings filed in this case.

The court recognizes this issue is somewhat mitigated by plaintiff's counsel's efforts to omit time entries connected with claims arising from the supply agreement, rather than the Total Rebate Claims.[6]  However, a review of the records indicates multiple entries devoted to drafting the Complaint as a whole, specifically:

---

[6] In its objection, Reasor's asserts that "[p]laintiff has made no effort to reduce its claimed fees for the work done on the supply agreement claims which were ultimately dropped."  [Doc. 106, p. 9]. However, this is not borne out by the evidence submitted.  Having reviewed the documents, the court notes only a few entries tied to the supply agreement claims, rather than the Total Rebate Claims.  Specifically, the court concludes a reduction is warranted based on the following: attorney Meuers's April 12 entry of 0.5 hours for "work on developing argument as to whether any fiduciary duties were breached by Reasor's that could be added to the Complaint" and attorney DeFalco's April 14 entry of 1 hour for the following:  "Legal research concerning breach of fiduciary duty claims; Add count in Complaint concerning Reasor's breach of fiduciary duty; Develop strategy concerning additional counts relating to breach of PACA obligations; Draft three new counts based on breach of PACA; Confer with Local Counsel Capron concerning filing."

<u>Lawrence H. Meuers, Esq.</u>

| Date | Hours | Rate | Amount | Description |
|---|---|---|---|---|
| 4/13/2016 | 1.0 | $ 375.00 | $ 375.00 | Draft counts in complaint against Reasor's; Analyze whether additional causes of action can be developed; Forward potential issues to attorney DeFalco for research. |
| 4/4/2016 | 1.0 | $ 375.00 | $ 375.00 | Legal research regarding statute of limitations in Oklahoma for potential causes of action against Reasor's and review file for dates in which they may be applicable. |
| 4/4/2016 | 1.2 | $ 375.00 | $ 450.00 | Legal research and review of facts of file including interview with Brett Puckett and notes of conversations with Mac Finlayson regarding potential causes of action that can be alleged complaint that was signed from Crossroads rather than as PACA trustee. |
| 4/7/2016 | 0.2 | $ 375.00 | $ 75.00 | Complete draft of complaint and forward it to Attorney De Falco and Paralegal Rogers for comment. |
| 4/8/2016 | 0.5 | $ 375.00 | $ 187.50 | Receipt and review of comments to complaint by Attorney De Falco and Paralegal Rogers. |
| 4/8/2016 | 1.0 | $ 375.00 | $ 375.00 | As a result of comments and review of complaint, re-draft complaint in chronological order with claims of Crossroads against Reasor's for breach of contract first and end with PACA trust and set off issues. |
| 4/8/2016 | 0.4 | $ 375.00 | $ 150.00 | Correspondence to Attorney Finlayson for Crossroads with copy of draft of complaint; Correspondence with Attorney Finlayson regarding his comments to and approval of complaint. |
| 4/11/2016 | 0.2 | $ 375.00 | $ 75.00 | Review comments from Mac Finlayson with outline of additional facts from Brett Puckett. |
| 4/11/2016 | 0.2 | $ 375.00 | $ 75.00 | Draft list of questions to Brett Puckett as follow up to facts provided and forward to Mac Finlayson. |
| 4/11/2016 | 0.5 | $ 375.00 | $ 187.50 | Review Mac Finlayson's response regarding comments regarding Reasor's attorneys. |
| 4/11/2016 | 0.5 | $ 375.00 | $ 187.50 | Draft response with strategy and Reasor's last position provided to us. |
| 4/11/2016 | 0.1 | $ 375.00 | $ 37.50 | Review Attorney Finlayson's response. |
| 4/11/2016 | 0.2 | $ 375.00 | $ 75.00 | Correspondence back and forth with Mac Finlayson and Brett Puckett regarding additional facts regarding Reasor's. |
| 4/12/2016 | 0.2 | $ 375.00 | $ 75.00 | Correspondence back and forth with Mac Finlayson regarding requested fax from Brett Puckett. |
| 4/12/2016 | 0.5 | $ 375.00 | $ 187.50 | Edit grammar in Complaint. |
| 4/12/2016 | 0.2 | $ 375.00 | $ 75.00 | Send draft complaint to local counsel, Steve Capron, for comment. |
| 4/12/2016 | 0.2 | $ 375.00 | $ 75.00 | Correspondence from Mac Finlayson regarding answers to tentative events from Brett Puckett. |
| 4/12/2016 | 1.0 | $ 375.00 | $ 375.00 | Re-draft sections of complaint and slightly change theory in light of clarified dates of events provided by Brett Puckett. |

---

Because DeFalco block billed this entry, it is impossible for the court to discern the time reasonably expended with respect to the prevailing claims from the time associated with the abandoned breach of fiduciary duty claim.  Thus, the court applies a 50% reduction to the entry, and reduces attorney DeFalco's time to 0.50 hours.  *See Okla. Nat. Gas Co.*, 355 F. Supp. 2d at 1264.

| | | | | | |
|---|---|---|---|---|---|
| 4/14/2016 | 0.5 | $ 375.00 | $ | 187.50 | File proof of complaint, disclosure statement, and civil cover sheet. |
| 4/14/2016 | 0.2 | $ 375.00 | $ | 75.00 | Telephone conference with Mac Finlayson regarding filing complaint. |
| 4/14/2016 | 0.4 | $ 375.00 | $ | 150.00 | Multiple correspondence back and forth with Attorney Stokes regarding filing complaint and local counsel. |
| 4/14/2016 | 0.2 | $ 375.00 | $ | 75.00 | Numerous correspondence back and forth with Attorney Capron regarding filing complaint. |
| 4/14/2016 | 0.2 | $ 375.00 | $ | 75.00 | Receipt and review of file-stamped copies of pleadings and correspondence with Attorney Capron regarding the filing. |

**Luanne M. Rogers, ACP, FCP, FRP**

| | | | | | |
|---|---|---|---|---|---|
| 4/8/2016 | 1.5 | $ 195.00 | $ | 292.50 | Analyze and revise draft Reasor's complaint, and prepare for attorney final review, and submission to Crossroads' counsel. |
| 4/13/2016 | 0.8 | $ 195.00 | $ | 156.00 | Analyze and work on revisions to complaint and research issues relating to filing in Oklahoma; Confer with Attorney Meuers and Attorney De Falco regarding filing information and items needed for local counsel to file; Telephone conference with Clerk of Court regarding notice of immediate filing required for issuance of new case number. |
| 4/14/2016 | 0.8 | $ 195.00 | $ | 156.00 | Analyze, revise draft of complaint, regarding additional counts. |

**Steven M. De Falco, Esq.**

| | | | | | |
|---|---|---|---|---|---|
| 4/4/2016 | 1 | $ 295.00 | $ | 295.00 | Conversation with Attorney Meuers concerning allegations in Complaint; Prepare Summons and Civil Cover Sheet; Conversation with Local Counsel concerning filing of Complaint; Computer-assisted search of local rules concerning procedure to initiate a new lawsuit. |
| 4/7/2016 | 0.8 | $ 295.00 | $ | 236.00 | Edit and proof Complaint against Reasor's. |
| 4/8/2016 | 0.7 | $ 295.00 | $ | 206.50 | Continue to edit and proof Complaint against Reasor's. |
| 4/14/2016 | 0.6 | $ 195.00 | $ | 117.00 | Finalize complaint for filing with court. |
| 4/14/2016 | 0.4 | $ 195.00 | $ | 78.00 | Multiple conferences with Attorney De Falco regarding facts and exhibits, issue relating to assignment, and contact from existing local counsel, regarding new action to be filed. |

The court cannot apportion these entries between time devoted to the supply agreement claims, which were ultimately abandoned, and the Total Rebate Claims. Because plaintiff failed to pursue the supply agreement claims, which represented half of the claims asserted in the original Complaint, a fifty percent (50%) reduction of these entries is warranted. For this reason, the court

reduces attorney Meuers's time by 5.3 hours, attorney DeFalco's time by 1.75 hours, and paralegal Rogers's time by 1.55 hours.

Further, despite counsel's best efforts, the majority of the time entries devoted to drafting the Amended Complaint are redundant because the counts asserted in the Amended Complaint were identical to those asserted in the original pleading.  For this reason, the court concludes that a fifty percent (50%) reduction of time is warranted for entries classified as Task Code 1 from May 31, 2016 through June 15, 2016—reflecting work on the Amended Complaint.  Thus, the court applies an additional reduction to Task Code 1 of 3.15 hours of attorney Meuers' time, 2.55 hours of attorney DeFalco's time, and 2.25 hour of paralegal Rogers's time is warranted.

Finally, as to the time categorized as Task Code 1, the court notes that some of the entries reflect non-billable administrative or clerical work.  The court concludes that an additional ten percent (10%) reduction of Task Code 1 time is warranted to account for clerical or administrative work.

Thus, the court reduces the time included in Plaintiff's Exhibit 2 for Task Code 1 to the following:  14 hours for attorney Meuers; 4.14 hours for attorney DeFalco; and 4.68 hours for paralegal Rogers.

With respect to the motion to dismiss briefing (Task Code 7), during the evidentiary hearing, Reasor's argued that much of the briefing was addressed to counts that were later abandoned or on which Reasor's prevailed.  Having reviewed the evidence submitted, the court finds the following entries, categorized as Task Code 7, relate only to abandoned claims:

- A May 31, 2016 entry by attorney DeFalco for 0.8 hours of legal research regarding "cases dealing [*sic*] reasonable notice for termination of contract";

- A June 1, 2016 entry by paralegal Rogers of 1 hour for "legal research regarding covenant of good faith and fair dealing in every contract and special requirements under Oklahoma law"; and

- A June 1, 2016 entry by paralegal Rogers of 0.6 hours to "analyze cases and legal research cited by Reasor's in motion to dismiss regarding breach of implied duty of good faith and fair dealing and prepare memo to Attorney De Falco regarding research, existing claims, and ability to make claims based on Oklahoma law."

Thus, this time is not billable.

With regard to the remaining time, Reasor's motion to dismiss was nine pages of substantive argument which can be fairly broken down as follows:  a two paragraph introduction; a one page summary and standard; three pages devoted to Count 1 and breach of the supply agreement (which was ultimately abandoned); three-and-a-half pages devoted to the validity of the set-off and Counts 2, 3, 4, 5, 6, 7, 8, and 9; and one paragraph discussing Count 5 individually (which the court dismissed). *See* [Doc. 23].  Meuers' twenty-page (23) page response can be fairly divided as follows:  four pages of appendix; a two page summary and standard section; five-and-a-half pages devoted to Count 1; three-and-a-half pages devoted to Counts 2, 3, 4, 5, 6, 7, 8, and 9 generally; one paragraph devoted to Counts 5, 7, and 9; one-and-a-half pages discussing Count 6; one-and-a-half pages discussing Count 7; one half page devoted to Count 8; and two pages directed to Count 5.  Thus, 9 ½ pages, or approximately 40%, directly relate to claims on which Meuers did not prevail.

For this reason, the court concludes that a forty percent (40%) reduction of Meuers's time related to the motion to dismiss the Amended Complaint is warranted.  Additionally, an identical reduction is warranted for time associated with Reasor's motion to dismiss the original complaint, as, in response to that motion, Meuers dismissed a little more than 40% of the original claims.

Thus, the court reduces the time associated with plaintiff's Task Code 7 to the following: 10.2 hours for attorney Meuers; 6.66 hours for attorney DeFalco; and 7.56 hours for paralegal Rogers.

B.      *Fees Related to the October 27, 2017 Motion for Reconsideration of Judgment*

Reasor's next objects to fees related to plaintiff's October 27, 2017 Motion for Reconsideration of Judgment.  Meuers states that $19,591.50 of the fees sought relate to the motion for reconsideration, representing 35.1 hours of attorney Meuers time, 19.5 hours of attorney DeFalco's time, and 4.1 hours of paralegal Rogers's time.[7]  Reasor's argues no fees should be awarded related to that motion because it was denied and, therein, the court stated that "plaintiff's motion seeks only to revisit arguments already addressed in the prior briefing."  *See* [Doc. 72, p. 2].

In the motion for reconsideration, Meuers argued that this court erred with respect to Count 9—specifically, that this court erred in concluding that the Reasor's set-off did not effect a transfer. [Doc. 68, p. 2].  While Meuers did not succeed on the motion for reconsideration, the divided Tenth Circuit panel ultimately reversed this court's judgment on that issue.  As previously stated, the divided panel concluded that, pursuant to the plain and ordinary meaning of the term "transfer," Crossroads's transferred an assert of the Suppliers-Crossroads PACA Trust when it allowed Reasor's to set off the $308,721.23.  *Meuers Law Firm, P.L.,* 796 F. App'x at 480-81.  Thus, even though this court denied the motion to reconsider, because Meuers ultimately prevailed on the count raised therein—Count 9—the court declines to wholly preclude Meuers from seeking attorney fees related to the motion.

---

[7] Reasor's characterizes fees sought by Meuers related to the motion for reconsideration as totaling approximately $22,600.50.  [Doc. 106, p. 10].  However, based on the records submitted by Meuers—the party that bears the burden—the $19,591.50 sum appears accurate.

However, as previously stated by this court, plaintiff's October 27 motion for reconsideration of judgment sought only to revisit arguments already addressed in prior briefing. The appellate arguments on which Meuers ultimately prevailed differed significantly from those raised in the district court briefing.  For these reasons, the court concludes that a fifty (50%) reduction of fees related to the motion for reconsideration of judgment is warranted.  *See Parsons v. Volkswagen of Am., Inc.,* 341 P.3d 662, 671 (Okla. 2014) ("Trial judges have wide discretion in making reductions based on estimates of time spent on activities that are non-compensable in whole or in part.").  Thus, the court reduces the time associated with plaintiff's Task Code 2 to the following:  17.55 hours for attorney Meuers; 9.75 hours for attorney DeFalco; and 2.05 hours for paralegal Rogers.

C.      *Fees Related to Discovery*

Reasor's next objects to the $26,245.50 in fees sought for discovery.[8]  Reasor's argues that, because this matter was submitted to the court on stipulated facts, extensive discovery was unwarranted and excessive.

During the evidentiary hearing, attorney Meuers explained the difficulties associated with obtaining necessary documents.  Crossroads had gone out of business prior to the initiation of this lawsuit, and, when Meuers went to the Crossroads warehouse to obtain the books and records, they were all gone.  Accordingly, Meuers had to work with the software company utilized by Crossroads to recreate the documentation for all accounts receivable.  Additionally, adequately responding to discovery required Meuers to frequently contact Crossroads' former principal, who

---

[8] In its objection, Reasor's states that fees sought by Meuers related to discovery total $25,489.50. [Doc. 106, p. 10].  Meuers assigns discovery Task Code 3 and states the total amount sought is $26,245.50, reflecting 29.8 hours of attorney Meuers's time, 20.1 hours of attorney DeFalco's time, and 55.4 hours of paralegal Rogers's time.  The court adopts the larger sum as substantiated by Meuers in Exhibit 2.

was not always cooperative.  The court is persuaded that these circumstances elevate this matter beyond a run-of-the-mill written discovery exchange.  Further, although this case was ultimately presented to the court on stipulated facts, it was entirely reasonable to exchange written discovery as due diligence in order to confirm those stipulated facts.  Thus, the court declines to wholly bar Meuers from recovering attorney fees for discovery.

However, many of the time entries in Task Code 3 are so vague or broad so as to prohibit the court from concluding that the time was reasonably expended.  A small sample of these entries follows:

- On January 5, 2017, attorney DeFalco billed 0.6 hours to "analyze Amended Complaint and documents";

- On January 23, 2017, paralegal Rogers billed 1.0 hour to "outline documents and information";

- On February 3, 2017, attorney Meuers billed 0.2 hours to "draft response correspondence"; and

- On March 17, 2017, attorney Meuers billed 1.2 hours to "review financial information."

The Tenth Circuit has recognized that, in some cases, mandating that the "district court identify hours reasonably expended by billing entry or litigation activity would, in many cases, be practically impossible." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998). Thus, "[t]here is no requirement . . . that district courts identify and justify each disallowed hour. Nor is their [*sic*] any requirement that district courts announce what hours are permitted for each legal task." *Id.* (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir. 1986)). "Instead, '[a] general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use.'" *Id.* (quoting *Mares*, 801 F.2d at 1203).

In this case, at the time of discovery, Meuers claims were narrowed to eight causes of action,[9] five of which Meuers ultimately prevailed on. Thus, Meuers' prevailed on roughly sixty seven percent (67%) of the claims. As a result, a thirty-seven (37%) reduction would generally appear warranted. However, based on the court's understanding of the claims and procedural history in this matter, the discovery was generally relevant to all of the Total Rebate Claims. That is, the factual basis was the same and the presence of the claims on which Meuers did not prevail likely did not affect the scope of discovery. Thus, the court concludes only a thirty percent (30%) reduction is warranted. The court therefore reduces the time associated with plaintiff's Task Code 3 to the following: 20.86 hours for attorney Meuers; 14.07 hours for attorney DeFalco; and 38.78 hours for paralegal Rogers.

E.      *Duplicative Fees and Fees for Excess Research and Drafting at Appellate Level*

Reasor's argues that the fees associated with drafting and researching plaintiff's Tenth Circuit briefs are excessive because the parties had already presented the PACA issue to this court.[10] Thus, Reasor's argues "drafting and research of the same issue to the Tenth Circuit was greatly simplified." [Doc. 106, p. 11]. Reasor's further contends "[r]eview of Plaintiff's time sheets shows a significant amount of duplicative and excess effort by multiple time-keepers on the same issue." [*Id.*].

The court first considers the multiple timekeepers issue. Under Oklahoma law,

[t]here is no legal basis to limit an attorney fee award to only one attorney. . . . When more than one attorney represents the prevailing party fees awarded should

---

[9] The court dismissed Count 5 in the September 28, 2016 Order [Doc. 30].

[10] Significantly, Reasor's "does not dispute that a significant amount of research and writing was required to brief" the ultimate issue presented to this court—whether PACA prohibited Reasor's from exercising the set-off. [Doc. 106, pp. 10-11]. Accordingly, Reasor's does not specifically object to fees associated with the motion for judgment on stipulated facts briefing (Task Code 13). However, Reasor's has asserted a general objection to the fees as excessive.

reflect the efforts of all, at least to the extent that the time reported does not reflect duplication of effort or work that should be performed by non-lawyers.

*Okla. Nat. Gas Co*., 355 F. Supp. 2d at 1259 (internal citation and quotations omitted).

During the September 18 evidentiary hearing, attorney Meuers described the process employed by his firm in this case as one in which he set forth the litigation strategy, which was implemented by DeFalco and Rogers. With respect to written briefs specifically, attorney Meuers created outlines, and then delegated drafting to either attorney DeFalco or paralegal Rogers. Attorney Meuers then reviewed the drafts and made the necessary edits.

It is clear from the majority of the time records submitted that plaintiff's counsel generally adhered to this approach throughout the Tenth Circuit briefing, although it appears that attorney Meuers took a more active role in drafting the briefs with attorney DeFalco and paralegal Rogers making revisions and providing research support. However, a minority of the entries are too vague or broad for the court to determine that no duplication of efforts occurred. This is particularly the case with respect to Meuers's Third Brief on Cross-Appeal. By way of example, paralegal Rogers's time entries for January 23, 2019 include the following: (1) 3.0 hours to "proof and edit brief"; (2) 1.5 hours for "continued work on drafting briefing"; and (3) 1.0 hour for "continued work on drafting, editing, and completing third brief on appeal." In general, however, counsel's records are sufficient to ensure no duplication of efforts.

The court next considers whether the time is excessive based on the complexity of the issues presented to the Tenth Circuit. As previously stated, in its objection, Reasor's argues "drafting and research of the same issue to the Tenth Circuit was greatly simplified" because the parties had previously presented the issues to this court. [Doc. 106, p. 11]. The court concurs with defendant's assessment that it was not until the issues reached the Circuit that this case was refined to its essence.

Yet, Reasor's singular focus on Count 9 ignores Reasor's own role in expanding the issues raised, and therefore the complexity, of the appeal.  As stated above, Reasor's filed a cross-appeal as to the court's judgment in plaintiff's favor on Counts 3, 4, 6, and 8.  Thus, the issues on appeal cannot be fairly characterized as limited to a single issue or claim.  Further, the cross-appeal increased the number of required briefs.  Additionally, during the evidentiary hearing, Meuers identified a Second Circuit Court of Appeals decision issued after this court's September 29, 2017 Judgment and only a few months prior to the appeal that significantly changed Meuers's approach. *See PACA Tr. Creditors of Lenny Perry's Produce, Inc. v. Genecco Produce Inc.*, 913 F.3d 268 (2d Cir. 2019).  It is entirely reasonable that additional research and drafting was required in light of this new authority.[11]

Based on the foregoing, as well as the court's review of the appellate briefs and motions for judgment submitted to this court, the court concludes that a thirty percent (30%) reduction is warranted as to time associated with the appeal.  The court therefore reduces the time associated with plaintiff's Task Code 4 to the following:  61.88 hours for attorney Meuers; 23.73 hours for attorney DeFalco; and 58.94 hours for paralegal Rogers.  Additionally, the court reduces the time associated with plaintiff's Task Code 15 (appeal), to the following:  27.72 hours for attorney Meuers and 1.68 hours for paralegal Rogers.  Attorney DeFalco did not bill any time designated as Task Code 15.

F. *Fees for Claims on Which Meuers Did Not Prevail*

In the final objection raised in defendant's written response to plaintiff's motion, Reasor's argues that Meuers failed to reduce its requested fees for time incurred in connection with claims on which Meuers did not prevail or abandoned.  Having reviewed the evidence submitted by

---

[11] The court notes that *Lenny Perry* is, in fact, extensively discussed in Meuers's appellate briefs.

Meuers, the court does not agree that Meuers wholly failed to reduce its time for claims on which it did not prevail or abandoned.

With respect to the abandoned claims, the court has previously addressed time classified as Task Code 1 (Complaint or Amended Complaint) or Task Code 7 (Motion to Dismiss).  Having reviewed the remaining time entries dated prior to Meuers filing its motion for judgment on the stipulated facts, the court finds only one entry related to the abandoned claims:  a May 31, 2016 entry of 1 hour by attorney DeFalco for "legal research concerning breach of implied duty of good faith, " categorized as Task Code 11.  Thus, the court reduces attorney DeFalco's time by 1 hour.

With respect to the claims that Meuers did not abandon but on which Meuers did not prevail, the claims are limited to Count 2 (breach of the produce sales contracts), Count 5 (violation of PACA Order), and Count 7 (violation of PACA statute: breach of trust).  As previously stated, Count 5 was dismissed on Reasor's 12(b)(6) motion, and the court has previously addressed time devoted to that claim in considering Reasor's objection to time devoted to the pleadings.  Thus, the court need only consider whether further reduction is warranted for time directed to Count 2 and Count 7.

Another U.S. District Judge sitting in this district recently recognized:  "Although apportionment between fee-bearing and non-fee bearing claims is the rule, if a court finds all of the time devoted to the alleged non-fee-bearing claim . . . would have been necessarily incurred in connection with a claim that is fee-bearing . . . then apportionment is not required." *SFF-TIR, LLC v. Stephenson,* — F. Supp. 3d —, 2020 WL 1651164, at *88 (N.D. Okla. Apr. 3, 2020) (internal citations and quotations omitted); *see also Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995) ("We have refused to permit the reduction of an attorneys fee request if successful and unsuccessful claims are based on a 'common core of facts.'").  Here, Count 2 and Count 7 were

based on a common core of facts as those claims on which Meuers prevailed—specifically, the produce sales contracts.  Thus, a reduction on this basis is inappropriate.

### G.      Fees Related to Procedure

As previously stated, during the evidentiary hearing, Reasor's objected to the time included in plaintiff's Task Code 8 and attributed to "procedure."  Having reviewed the evidence submitted, time designated as Task Code 8 includes both time appropriately billed to the client (and therefore Reasor's) as well as some time devoted to administrative or clerical tasks.  For example, Task Code 8 includes time spent by attorney Meuers to attend this court's Scheduling Conference and prepare the Joint Status Report.  This time is appropriately billed.  However, Task Code 8 also includes entries by paralegal Rogers for electronically docketing plaintiff's filings and other clerical tasks.  Administrative or clerical tasks like electronic filing are not billable.  The court applies a twenty-five percent (25%) reduction of paralegal Rogers's time in Task Code 8 to account for administrative functions.  *See Case*, 157 F.3d at 1250.  The court therefore reduces the time associated with plaintiff's Task Code 8 for paralegal Rogers to 50.85 hours.

### H.      Fees Related to Settlement

With respect to fees incurred in connection with settlement, the court first notes that time included in Task Code 9 includes time devoted to informal settlement negotiations; preparation for and attendance at the settlement conference before Magistrate Judge McCarthy in this court on May 10, 2017; and mediation conducted at the appellate level pursuant to Tenth Circuit Rules. Further, during the evidentiary hearing, attorney Meuers emphasized plaintiff's continued desire, and related efforts, to settle this litigation.  Because Task Code 9 encompasses settlement efforts over a three-year period, which this court encourages and approves, the court declines to reduce the requested fees on this basis.

I.      *Other Reductions*

Separate and apart from the specific objections raised by Reasor's, is the more general question of whether the fees are reasonable based on the nature of the case presented. *See Okla. Nat. Gas Co.*, 355 F. Supp. 2d at 1253. The court cannot ignore the reality that Meuers asserted a litany of separate claims, rather than asserting few claims targeted to the essential issue—the propriety of the set-off. The parties separately briefed each Count, and this court separately considered each in its September 29, 2017 Order. It is reasonable to conclude that some of the time and attention required to brief the separate claims would have been unnecessary had Meuers clearly framed the essential issue. Moreover, although the court recognizes the difficulties Meuers faced obtaining the relevant documents, once obtained, the evidence in this case was both limited and undisputed to the point. In fact, the parties submitted the matter to the court for decision on only twenty-six stipulated facts and ten exhibits. *See* [Doc. 53].

For the foregoing reasons, the court concludes that an additional reduction is warranted to account for the unnecessary complexity wrought by the assertion of multiple causes of action. Because Meuers did not prevail on approximately 1/3 of the claims submitted to this court for judgment, the court applies a thirty percent (30%) reduction to fees associated with the following: the stipulation of facts (Task Code 6); research (Task Code 11); strategy (Task Code 12); and the motion for judgment on the stipulated facts (Task Code 13). The court reduces those tasks to the following:

**Attorney Meuers:** 9.10 (Task Code 6); 2.80 (Task Code 11); 7.98 (Task Code 12); and 53.20 (Task Code 13)

**Attorney DeFalco**: 1.82 (Task Code 6); 1.12 (Task Code 12); and 24.64 (Task Code 13)

**Paralegal Rogers:** 2.10 (Task Code 6); 0.84 (Task Code 12); and 27.56 (Task Code 13).

24

Additionally, the court has reviewed plaintiff's Supplement to Its Motion for Attorneys' Fees and Costs (As to Amount), which seeks an additional $26,901.00 in fees associated with its motion. *See Sw. Stainless, L.P. v. Sappington*, No. 07-CV-0334-CVE-TLW, 2010 WL 1486935, at *14 (N.D. Okla. Apr. 13, 2010) (citing *Burk,* 598 P.2d at 663) ("[P]laintiffs are entitled to some compensation for reasonable time and effort spent in petitioning for a fee."). The court acknowledges its initial surprise in reading plaintiff's request for nearly $27,000 in fees incurred in seeking fees. However, it is necessary to view the request in the context of the procedural history of this case. Meuers incurred $8,709.00 in fees in preparation of its original motion. On August 10, 2020, this court entered an Opinion and Order in which it concluded that Meuers was entitled to an attorney fee award pursuant to Okla. Stat. tit. 12, § 936, and set the amount of reasonable fees to be awarded for hearing. [Doc. 111]. Thereafter, *Reasor's* filed the motion to reconsider plaintiff's entitlement to attorney fees under § 936. [Doc. 113]. As a result, Meuers incurred an additional $9,255.00 in fees to respond to the motion. The remaining fees represent hearing preparation, including preparation of ten exhibits utilized by Meuers during the hearing. The exhibits, referred to herein, assigned each time entry a task code to assist the court in its consideration of defendant's objections. When viewed in context, the court finds and concludes that the sum sought in the supplemental application is not wholly unreasonable.

However, the court strikes one hour from the September 18, 2020 entry for attorney Meuers of 2.5 hours to attend the evidentiary hearing, because the hearing lasted only 1.5 hours. *See* [Doc. 121]. In addition, some of the time entries related to the motion are so vague that the court cannot determine if the time was reasonably spent. For example, an August 27, 2020 entry by attorney Meuers for 1.5 hours to "Draft Motion for fees. Legal research of issues." Other entries are duplicative. For example, on February 25, 2020, paralegal Rogers made two separate entries of

0.5 hours.  One describes the work as "legal research regarding support for motion for attorneys' fees to be awarded," and the second states "legal research regarding support for attorneys' fees to be awarded against Reasor's."  Finally, some of the entries include administrative tasks, such as electronic filing with the court.  The court finds and concludes that a twenty (25%) reduction is warranted to account for these issues.  Thus, the court reduces the amount sought by plaintiff in its supplement to the motion for fees to $19,894.50.

In addition, plaintiff's Exhibit 2, Task Code 14 includes time incurred seeking attorney fees that are not included in the supplement.  These entries, dated late May of 2018 to early June of 2018, relate to Reasor's court-ordered response to the request for attorney fees included by Meuers in its motion for judgment on the stipulated facts, as well as plaintiff's reply.  However, the court ultimately did not rule on that request for attorney fees due to the filing of the cross-appeal.  Meuers filed the instant motion after issuance of the Tenth Circuit's Mandate.  Further, having reviewed the June 2018 reply, it is almost entirely duplicative of the briefing associated with this motion.  Thus, the court concludes that the time categorized as Task Code 14 is wholly duplicative, and should be reduced to a sum of zero ($0).

Based on the foregoing reductions, the court concludes that the revised lodestar—that is, the time reasonably expended multiplied by the hourly rate—is $190,757.83.

## V.    *Burk* Factors

Meuers does not seek an enhancement of the fee award based on application of the *Burk* factors and therefore the court need not consider a *Burk* enhancement.  *See Okla. Nat. Gas Co.,* 355 F. Supp. 2d at 1253.  However, because some of the parties' arguments overlap with the *Burk* factors, the court reviews the *Burk* factors to ensure that the revised lodestar is neither

26

"unreasonably high or unreasonably low." *Atwood v. Atwood*, 25 P.3d 936, 951 (Okla. Civ. App. 2001).

This court has already considered the time and labor required to calculate the revised lodestar amount. Significantly, the parties agree that this case presented a novel legal issue. Although more complex cases may sometimes justify a higher fee, *see Henderson v. Horace Mann Ins. Co*., 560 F. Supp. 2d 1099, 1120 (N.D. Okla. 2008), the court concludes that the revised lodestar adequately compensates for the complexity of the issue presented. Likewise, the hourly rates charged reflect the level of skill necessary to perform the legal services, as well as the experience, reputation, and ability of the attorneys. The court has been provided no information regarding the remaining *Burk* considerations, and they are not a factor in this case. Based on the foregoing, no *Burk* enhancement is warranted.

## VI.   Relationship to the Amount in Dispute

During the evidentiary hearing, Reasor's emphasized to the court that the maximum recovery permitted in this case by plaintiff was always $308,721.73. As prevailing party, Meuers ultimately received the entirety of the $308,721.73 sought. The court's revised lodestar total of $190,757.83 amounts to approximately 61.8% of the damages sought and awarded. In a case where the defendant argued that an attorney fee award was excessive because it amounted to sixty-five percent (65%) of the damages awarded, the Oklahoma Supreme Court stated:

> While we are committed to the rule that a fee for legal services must bear some reasonable relationship to the judgment, we have never identified a percentage above which a fee's relationship to the damage award must be deemed unreasonable *per se*. In *Southwestern Bell Telephone Co. v. Parker Pest Control, Inc.,* we approved a $3,000 fee award for a suit in which the plaintiff sought $3,867 and the defendant confessed judgment for $1,500. In *Arkoma Gas Company v. Otis Engineering Corporation*, we affirmed a fee award of $5,500 in a breach of warranty case in which the plaintiff sued for more than $70,000 and ultimately recovered only $100. In *Catlin Aviation Company v. Equilease Corporation*, the court approved a fee of $600 on a recovery of $1,167 where the plaintiff had sued

for $17,000.  The allowance awarded in the instant case is clearly within the range
of fees in relation to damages previously approved by the court.

*Finnell v. Seismic*, 67 P.3d 339, 347 (Okla. 2003) (internal footnotes omitted).  Applying *Finnell,*

the court concludes that the revised lodestar in this case is within the ranges of fees in relation to

damages acceptable under Oklahoma law.  Thus, the court concludes no reduction is warranted,

particularly because plaintiff ultimately recovered 100% of the damages sought.

## VII.    Conclusion

WHEREFORE, plaintiff Meuers Law Firm, P.L.'s Motion for Attorney's Fees and Costs

[Doc. 102] is granted in part and denied in part.  Plaintiff is awarded attorney fees totaling

$190,757.83.  The total sum includes $170,863.33 for fees sought in the original motion (Exhibit

2), and $19,894.50 incurred in seeking fees (the supplement).  The court has affixed as Exhibit B

a version of plaintiff's Exhibit 2 reflecting the court's reductions.

IT IS SO ORDERED this 25th day of September, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

## EXHIBIT A

| Task | Task Code | LHM Total Amount | Total Hours | LMR Total Amount | Total Hours | SMD Total Amount | Total Hours | Total Total Amount | Total Hours |
|------|-----------|------------------|-------------|------------------|-------------|------------------|-------------|--------------------|------------|
| Complaint | 1 | $9,187.50 | 24.5 | $1,620.00 | 9.0 | $2,773.00 | 9.4 | $13,580.50 | 42.9 |
| Reconsideration | 2 | $13,162.50 | 35.1 | $676.50 | 4.1 | $5,752.50 | 19.5 | $19,591.50 | 58.7 |
| Discovery | 3 | $11,175.00 | 29.8 | $9,141.00 | 55.4 | $5,929.50 | 20.1 | $26,245.50 | 105.3 |
| 10th Circuit | 4 | $33,150.00 | 88.4 | $13,893.00 | 84.2 | $10,000.50 | 33.9 | $57,043.50 | 206.5 |
| Stiupulation Facts | 6 | $4,875.00 | 13.0 | $495.00 | 3.0 | $767.00 | 2.6 | $6,137.00 | 18.6 |
| Mot Dismiss | 7 | $6,375.00 | 17.0 | $2,433.00 | 14.2 | $3,510.50 | 11.9 | $12,318.50 | 43.1 |
| Procedure | 8 | $6,037.50 | 16.1 | $11,376.00 | 67.8 | $2,743.50 | 9.3 | $20,157.00 | 93.2 |
| Settlement | 9 | $13,781.25 | 39.0 | $1,402.50 | 8.5 | $2,537.00 | 8.6 | $17,720.75 | 56.1 |
| Client Comm | 10 | $2,887.50 | 7.7 | $891.00 | 5.4 | $177.00 | 0.6 | $3,955.50 | 13.7 |
| Research | 11 | $1,500.00 | 4.0 | $0.00 | 0.0 | $295.00 | 1.0 | $1,795.00 | 5.0 |
| Strategy | 12 | $4,275.00 | 11.4 | $198.00 | 1.2 | $472.00 | 1.6 | $4,945.00 | 14.2 |
| Mot Judgment | 13 | $27,375.00 | 76.0 | $6,996.00 | 42.4 | $10,384.00 | 35.2 | $44,755.00 | 153.6 |
| Mot Fees | 14 | $1,575.00 | 4.2 | $643.50 | 3.9 | $1,829.00 | 6.2 | $4,047.50 | 14.3 |
| Appeal | 15 | $12,975.00 | 39.6 | $396.00 | 2.4 | $0.00 | 0.0 | $13,371.00 | 42.0 |
| **GRAND TOTAL** | | **$148,331.25** | **405.8** | **$50,161.50** | **301.5** | **$47,170.50** | **159.9** | **$245,663.25** | **867.2** |

## EXHIBIT B

| Task | Task Code | LHM Total Amount | LHM Total Hours | LMR Total Amount | LMR Total Hours | SMD Total Amount | SMD Total Hours | Total Total Amount | Total Hours |
|---|---|---|---|---|---|---|---|---|---|
| Complaint | 1 | $5,250.00 | 14.00 | $772.20 | 4.68 | $1,221.13 | 4.14 | $7,243.33 | 22.82 |
| Reconsideration | 2 | $6,581.25 | 17.55 | $338.25 | 2.05 | $2,876.25 | 9.75 | $9,795.75 | 29.35 |
| Discovery | 3 | $7,822.50 | 20.86 | $6,398.70 | 38.78 | $4,150.65 | 14.07 | $18,371.85 | 73.71 |
| 10th Circuit | 4 | $23,205.00 | 61.88 | $9,725.10 | 58.94 | $7,000.35 | 23.73 | $39,930.45 | 144.55 |
| Stiuplation Facts | 6 | $3,412.50 | 9.10 | $346.50 | 2.10 | $536.90 | 1.82 | $4,295.90 | 13.02 |
| Mot Dismiss | 7 | $3,825.00 | 10.20 | $1,247.40 | 7.56 | $1,964.70 | 6.66 | $7,037.10 | 24.42 |
| Procedure | 8 | $6,037.50 | 16.10 | $8,532.00 | 50.85 | $2,743.50 | 9.30 | $17,313.00 | 76.25 |
| Settlement | 9 | $13,781.25 | 39.00 | $1,402.50 | 8.50 | $2,537.00 | 0.60 | $17,720.75 | 48.10 |
| Client Comm | 10 | $2,887.50 | 7.70 | $891.00 | 5.40 | $177.00 | 1.00 | $3,955.50 | 14.10 |
| Research | 11 | $1,050.00 | 2.80 | $0.00 | 0.00 | $0.00 | 0.00 | $1,050.00 | 2.80 |
| Strategy | 12 | $2,992.50 | 7.98 | $138.60 | 0.84 | $330.40 | 1.12 | $3,461.50 | 9.94 |
| Mot Judgment | 13 | $19,162.50 | 53.20 | $4,897.20 | 27.56 | $7,268.80 | 24.64 | $31,328.50 | 105.40 |
| Appeal | 15 | $9,082.50 | 27.72 | $277.20 | 1.68 | $0.00 | 0.0 | $9,359.70 | 29.40 |
| **GRAND TOTAL** | | **$105,090.00** | **288.09** | **$34,966.65** | **208.94** | **$30,806.68** | **96.83** | **$170,863.33** | **593.86** |